ANDERSON, J.,
delivered the opinion of the court.
The court is of opinion that there is not error in the judgment of the circuit court for which it should be reversed. They deem it unnecessary to consider the ^question which has been ably argued by the counsel on both sides, whether a householder, who has made a homestead' deed, can alien or encumber his property, embraced in the homestead, by a subsequent deed in which his wife does not unite. The plaintiff in error, who claims all the goods under the homestead, upon which the attachments and executions were levied, has not aliened or encumbered them by deed. But they were in his possession when levied on, and claimed to be held by him under the homestead. The aforesaid question is not, therefore, involved in this case.
But the question does arise upon the evidence, whether the said homestead deed was executed by the plaintiff in error as a part, and in furtherance, of a design to hinder and delay and defraud his creditors in the recovery of their just debts? If so, it would be vitiated and invalidated thereby. Gilleland v. Rhodes, 34 Penn. St. R. 187; Diffendendeffer v. Fisher, 3 Grant’s Cases, 30; Smith v. Emerson, 43 Penn. St R. 456; Strouse, ex’or, v. Becker, 38 Penn. St. R. 190.
In the last case, Woodward, J., said, the rule of decision which denies the benefit of the exemption law to a dishonest debtor, who shuffles and conceals his property, * * * is founded in a _ sound morality, and is agreeable to the spirit and intention of the exemption law. The remark is equally applicable to the homestead law.
*409 The case is before us on a certificate of the evidence and not of the facts.
It is not our purpose to give a detailed statement of the evidence. It appears that Rose came to Richmond in August, 1878, and opened a retail store on Broad street. He brought with him a broken stock of goods, and had no other visible property. About the month of May, 1879, he went North and bought a large stock of goods, evidently on credit, as to the larger portion *of them. The debt of Sharp-less & Son was for $599.43. contracted on the 39th of May, 1879, and a negotiable note given for it at sixty days, which was protested July 31st, 1879. Claims against him were placed in the hands of John A. Coke, aggregating $1,320.40, which fell due, it would seem, only a few days earlier. The other debts upon which suits were brought and judgments obtained, and those upon which attachments were sued out, amount to upwards of $2,500, as well as can be ascertained from the record. The whole aggregating, perhaps, over $4,000, which were probably contracted for the stock of goods he brought on in the month of June, 1879, from the North. One witness estimates his stock of goods in June, 1879, to be worth from $5,000 to $6,000. He seems to have been engaged in selling goods by retail in a small way until he made this addition to his sto'-k in the month of June, 1879. Then, one month before the institution of the suits against him, and the levying of the attachments — one on the 26th of July, one on the 38th, and another on the 39th of July, 1879 —he suddenly changed his course of business from that of retailing to wholesale and retail, without any notice to the public, as far as appears, of his purpose to make such change, lie sold to merchants of Richmond; shipped large quantities of goods from the State; and pushed off his goods so rapidly that in the course of one short month, he had reduced his stock of goods, before the debts he had contracted for them fell due, from live to six thousand dollars, what his stock was estimated to be worth in June, to $2,150, the price for which the remnant actually sold, under the order of the court. By this means he had reduced his stock low enough to cover it by a homestead deed, and shield it from his creditors; and on the 31st of July, a few days before the attachments were sued out and levied on them, he ^executed such a deed, embracing all that remained of his stock, which, by an under valuation he put at $1,623. including not only the goods which were ievied upon and sold for $2,150, but all that he had sold between the date of the homestead deed and the making of the levy. Tor it seems he continued to sell the goods that he had set apart as a homestead, and probably sold in that interval, according to the estimate of his daily sales by his clerk, to the amount of from $350 to $300. What became of the money he received, for the large sales he had made, in the rapid reduction of his stock? The price he was to give for the goods had not' been paid. His attempted explanation is not satisfactory. It is evident, from the whole transaction, that it was the fraudulent contrivance of a debtor, to shield his property from the payment of his debts, under color of the homestead, as the final act, in its consummation.
But if the purchase money of the goods has not been paid, he is not entitled to hold them under the homestead law Article XI. section 1, of the Constitution; chapter 183, section 1, of the Code of 1873. It is very certain that a larger portion of his stock than that which was levied on and sold has not been paid for. These goods he so intermingled with his old stock on the shelves, that it was not in the power of the merchants from whom he purchased the new. to distinguish them from the old — those which had not been paid for, from those which had been paid for. It would seem reasonable and equitable that all should be held to be of the former class, unless shown by him not to be of that class. The onus should be on him to show, under these circumstances, that the goods which he embraced in his homestead, were not of the class that had not been paid for. It is a fact, that he had in his stock of goods a larger amount in value which he had not paid for than all that he claims under the ^homestead. And as he has put it out of the power of the defendants by intermingling them, to show it. it is incumbent on him to show that they are of the class of goods he has paid for. IIe has not shown that any part of the goods, which he claims under the homestead, has been paid for. and being mixed up by him with those which he has not paid for, so as to be undistinguishable, they will be taken to be all of the latter class, in the absence of all evidence to the contrary, and consequently are not subject to the homestead.
The question, whether a householder is entitled to have a homestead in a shifting stock of goods, used in the way of trade, ever liable to change, so that it is not the same yesterday and to-day, is a question of grave importance, but not necessary now to be decided,butnomatterhowitmightbe decided, for reasons already given, the homestead in this case could not be sustained.
Upon the whole, the court is of opinion to affirm the judgment of the circuit court.
Judgment affirmed.